JERSEY SHORE STATE BANK *v.* UNITED STATES

No. 85–1736.   Argued December 8, 1986—Decided January 20, 1987

REHNQUIST, C. J., delivered the opinion for a unanimous Court.

*Martin A. Flayhart* argued the cause and filed briefs for petitioner.

*Alan I. Horowitz* argued the cause for the United States. With him on the brief were *Solicitor General Fried, Assistant Attorney General Olsen, Deputy Solicitor General Lauber, Wynette J. Hewett,* and *Bruce R. Ellisen.*\*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Subtitle C of the Internal Revenue Code of 1954, 26 U. S. C. § 3101 *et seq.* (Code), imposes a number of employment taxes, among which are the income tax withheld from an employee's wages and the Social Security tax. The Code divides the burden of the Social Security tax between the employer and the employee, but imposes the income tax on the employee alone. The employer has responsibility, however, for both paying its share of the Social Security tax and withholding from the employee's wages the income tax and the

---

\*Briefs of *amici curiae* urging reversal were filed for First Alabama Bank by *Brock B. Gordon* and *Alan C. Christian;* and for the American Bankers Association by *John J. Gill III* and *Michael F. Crotty.*

employee's share of the Social Security tax. If the employer fails to pay over the withheld Social Security and income taxes to the Government, the employer is liable for their payment. Within 60 days of making an assessment of unpaid taxes against an employer, the Government is required, under § 6303(a) of the Code, to provide the employer with notice of the assessment and demand for payment. In some instances, a person other than the employer, such as a lender, may directly or indirectly pay the employee's wages. Section 3505 of the Code provides that such a person may be personally liable if the employee's Social Security and income taxes are not withheld and paid to the Government. This case presents the question whether § 6303(a) requires the Government to provide notice and demand for payment to a lender before bringing a civil suit against the lender to collect sums for which it is liable under § 3505. We hold that it does not.

The United States brought the present action against Jersey Shore State Bank in the United States District Court for the Middle District of Pennsylvania, seeking a determination that Jersey Shore was personally liable under § 3505 for amounts reflecting unpaid taxes required to be withheld from the wages of the employees of Pennmount Industries. The Government claimed that Jersey Shore paid wages directly to Pennmount employees during the fourth quarter of 1977 through the first quarter of 1980, thereby making it liable under § 3505(a) for a sum equal to the full amount of the unpaid withholding taxes for that period.[1] In the alternative, the complaint alleged that, for the same period, Jersey Shore supplied funds to Pennmount for the wages of Penn-

---

[1] Section 3505(a) provides, in pertinent part:

"[I]f a lender, surety, or other person, who is not an employer . . . with respect to an employee, . . . pays wages directly to such an employee . . . , such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) required to be deducted and withheld . . . ."

mount employees "with actual notice and knowledge" that Pennmount "did not intend or would not be able to make timely payment or desposits *[sic]* of the . . . taxes required to be deducted and withheld" from the wages. App. to Pet. for Cert. 40a–41a. Based on this latter allegation, the Government asserted that Jersey Shore was liable under § 3505(b) for 25 percent of the amount of funds supplied to Pennmount.[2]

The District Court granted summary judgment in favor of Jersey Shore, holding that § 6303(a)[3] requires the Government to send notice of an assessment against an employer to a third-party lender liable under § 3505. 628 F. Supp. 15 (MD Pa. 1985). Because the United States conceded that it had not provided Jersey Shore with notice of the assessments against Pennmount pursuant to § 6303(a), the court concluded that the suit against Jersey Shore was barred. The Court of Appeals for the Third Circuit reversed. 781 F. 2d 974 (1986).[4] We granted certiorari to resolve the intercircuit

---

[2] Section 3505(b) provides, in pertinent part:

"If a lender, surety, or other person supplies funds to . . . an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge . . . that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required . . . to be deducted and withheld by such employer . . . , such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer. However, . . . the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to . . . such employer for such purpose."

[3] Section 6303(a) provides, in pertinent part:

"Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof."

[4] One judge dissented from the majority opinion, arguing that the plain language of § 6303(a) required that the Government provide notice to the lender.

conflict over the issue decided by the Court of Appeals.[5] 476 U. S. 1157 (1986). We now affirm.

Section 6303(a) requires notice of an assessment to "each person liable for the unpaid tax." According to Jersey Shore, this phrase clearly describes a third-party lender liable under § 3505 for unpaid withholding taxes assessed against an employer. The relationship between § 3505 and § 6303(a), however, is not as clear as Jersey Shore maintains. Section 3505 does not declare that a lender is "liable for the unpaid tax." Instead, the section imposes liability on the lender for all or part of "a sum equal to the taxes." §§ 3505(a),(b).

Other portions of the text of § 6303(a) further demonstrate a lack of connection between that section and § 3505. Section 6303(a) not only provides that the Government shall give notice of an assessment "to each person liable for the unpaid tax," but it also requires notice "stating the amount" assessed and "demanding payment thereof." § 6303(a). Notice complying with these latter two requirements may have little meaning for a third-party lender. In the first place, the assessment against the employer may include the employer's share of unpaid Social Security taxes for which the lender is not liable. See § 3505; H. R. Rep. No. 1884, 89th Cong., 2d Sess., 21 (1966) (a lender "is not liable for the

---

[5] In addition to the Court of Appeals for the Third Circuit, four other Circuits have addressed whether the Government must provide § 6303(a) notice to third parties liable under § 3505. See *United States* v. *Messina Builders & Contractors Co.*, 801 F. 2d 1029 (CA8 1986) (§ 6303(a) notice required), cert. pending, No. 86–1007; *United States* v. *Hunter Engineers & Constructors, Inc.*, 789 F. 2d 1436 (CA9 1986) (§ 6303(a) notice not required), cert. pending, No. 86–209; *United States* v. *Merchants National Bank of Mobile*, 772 F. 2d 1522 (CA11 1985) (§ 6303(a) notice required), cert. pending, No. 85–1480; *United States* v. *Associates Commercial Corp.*, 721 F. 2d 1094 (CA7 1983) (§ 6303(a) notice required); see also *United States* v. *Friedman*, 739 F. 2d 252 (CA7 1984) (failure to provide notice within 60 days of assessment will not bar suit where Government has provided notice before assessment to person liable under § 3505).

employer's portion of payroll taxes"); S. Rep. No. 1708, 89th Cong., 2d Sess., 23 (1966) (same). Even where the assessment does not include such taxes, the lender's liability could equal the amount stated in the notice only if the lender provided payroll financing throughout the time period reflected in the assessment. Moreover, the chances are slim that the notice amount would be accurate for lenders liable only under § 3505(b), which limits a lender's exposure to 25 percent of the funds supplied to the employer. Accordingly, if sent to a lender, the notice required under § 6303(a) is likely to demand payment of an amount different from that for which the lender is liable. We find it improbable that Congress intended such a result. Reading the two sections together, we agree with the Court of Appeals that § 6303(a) is most logically read not to apply where the Government seeks to collect from a lender under § 3505.

In arguing to the contrary, Jersey Shore urges that it would be fundamentally unfair not to require the Government to provide lenders with § 6303(a) notice. Jersey Shore first maintains that, because employers and lenders are similarly situated under the Code, the procedural requirements applicable to employers also must be accorded to lenders. But even assuming that § 6303(a) notice would provide lenders with meaningful information, we are unpersuaded by this contention. Under the collection mechanisms established by the Code, employers and lenders are in very different positions. While employers are subject to the Government's summary collection procedures soon after unpaid employment taxes are assessed, see, e. g., §§ 6321, 6322, 6331, 6335, the legislative history of § 3505 makes clear that the Government may forcibly collect against a lender only by filing a civil suit. See H. R. Rep. No. 1884, 89th Cong., 2d Sess., 66 (1966) (where a third-party does not voluntarily satisfy the liability imposed by § 3505, "the United States may collect such liability by appropriate civil proceeding"). An employer therefore has a far greater need for an assessment

notice than third-party lenders, who are not subject to summary collection procedures.

We also reject Jersey Shore's related contention that a third-party lender is unfairly prejudiced by lack of an assessment notice because of the effect of an assessment on the statute of limitations for collection suits. Under the general rule set forth in § 6501(a), "the amount of any tax imposed . . . shall be assessed within 3 years after the return was filed . . . and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." Nevertheless, where a proper assessment has been made, the unpaid tax generally "may be collected by levy or by a proceeding in court . . . begun . . . within 6 years after the assessment." § 6502(a)(1). Under Jersey Shore's reading of these provisions, the Government enjoys an additional 6-year limitations period for collecting against a lender if it makes an assessment against the employer within three years after the corresponding employment tax return is filed. Jersey Shore submits that Congress could not have intended the Government to benefit from this longer statute of limitations when it seeks to collect against a lender without also requiring the Government to provide the lender with notice of the assessment against the employer.

Assuming, without deciding, that Jersey Shore's reading of the statute of limitations provisions is correct, we are not convinced that they render our construction of § 6303(a) implausible. A lender is not liable under § 3505 unless it either "pays wages directly" to an employee or supplies funds for the wages with "actual notice or knowledge" that the employer is either unable to make timely payment of the required withholding taxes or has no intention of doing so. The lender is deemed to have such actual notice or knowledge from the time the lender, in the exercise of due diligence, would have been aware that the employer would not or could not make timely payment. § 6323(i)(1). Accordingly, a prudent lender could be alerted to its liability under § 3505 at the

time it engaged in what the Government describes as "net payroll financing," a practice whereby the lender provides funds for payment of employees' net wages, but not funds for payment of withholding taxes. Thus, even without § 6303(a) notice, such a lender could take steps to protect itself against the possibility of a future § 3505 suit. The Committee Reports concerning § 3505 demonstrate that Congress considered precautions third parties could take to protect themselves:

> "[S]ureties can protect themselves against any losses attributable to withholding taxes by including this risk of liability in establishing their premiums, and lenders by including the amounts in their loans and taking adequate security." S. Rep. No. 1708, 89th Cong., 2d Sess., 23 (1966); H. R. Rep. No. 1884, 89th Cong., 2d Sess., 22 (1966).[6]

As the Court of Appeals recognized, this passage suggests that "Congress envisioned a system in which third parties would take their potential liability under section 3505 into consideration at the time they entered into the transaction exposing them to liability under the statute." 781 F. 2d, at 982.

For the foregoing reasons, we conclude that Congress did not intend to require the Government to provide a lender with notice under § 6303(a) before bringing a civil suit to collect under § 3505. The judgment of the Court of Appeals for the Third Circuit is therefore

*Affirmed.*

---

[6] Jersey Shore argues that this passage does not relate to § 3505, but instead refers only to an amendment to the Miller Act concerning the requirements for performance bonds on public works. It is true that the passage appears in each Committee Report under subheadings referencing the Miller Act. In both Reports, however, the passage immediately follows a discussion of lenders, sureties, and other persons liable under § 3505 and is prefaced with the phrase "[i]n the cases discussed above." Thus, the context of the passage makes clear that it relates to § 3505.